UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DEANN HANDY-RABY                          CIVIL ACTION

VERSUS                                         16-222-SDD-RLB

THE HOSPITAL SERVICE DISTRICT OF
WEST FELICIANA PARISH, LOUISIANA
AND THE BOARD OF COMMISSIONERS
OF THE HOSPITAL SERVICE DISTRICT
OF WEST FELICIANA

## RULING

This matter is before the Court on the *Motion to Dismiss for Failure to State a Claim*[1] filed by Defendants, The Hospital Service District of West Feliciana Parish, Louisiana and the Board of Commissioners of the Hospital Service District of West Feliciana ("Defendants"). Plaintiff, Deann Handy-Raby ("Plaintiff"), filed an *Opposition*[2] to which Defendants filed a *Reply*,[3] and Plaintiff filed a *Sur-Reply*.[4] For the following reasons, the motion will be granted in part and denied in part.

**I.    FACTUAL BACKGROUND**[5]

Plaintiff, an African-American, was hired on October 3, 2007, as a licensed practical nurse by the West Feliciana Parish Hospital ("Hospital"). Plaintiff alleges that, during her employment with the Hospital, Caucasians allegedly less qualified than African-American candidates were given promotions. Plaintiff also claims that she was told by the former Chief Nursing Officer, Kathleen Ford ("Ford"), that she would be given

---

[1] Rec. Doc. 13.
[2] Rec. Doc. 22.
[3] Rec. Doc. 23.
[4] Rec. Doc. 26.
[5] The Court bases the factual background on Rec. Doc. 16.
37815

a pay raise within her first six months of employment; however, she was not given a raise until she was employed for eight months. Plaintiff alleges that two Caucasian nurses hired by the Hospital immediately following their graduation from nursing school were paid at the same rate as Plaintiff although she had been working at the Hospital for five years. Plaintiff claims that, throughout her employment with the Hospital, she was paid in a disparate fashion, denied promotional opportunities, and harassed because she was African-American.

Plaintiff alleges that, at all times while employed at the Hospital, she was paid less than Caucasian employees of the Hospital although she had more qualifications and experience than her Caucasian counterparts. Plaintiff also claims that she was subjected to racial harassment consisting of, but not limited to: derogatory statements regarding African-Americans; comments that African-Americans "need to know their place;" placing Plaintiff as the head of housekeeping "because she can relate"[6] as all the employees in housekeeping are African-American; and Caucasian nurses refusing to treat African-American patients. Plaintiff further claims that, during her employment with the Hospital, there was no effective policy regarding harassment, discrimination, and retaliation.

On January 14, 2014, Plaintiff claims that a meeting was held with the nursing staff department to address: staff shortages, call-ins made by members of the department, and questions regarding how the Hospital determined qualifications for promotions. Ford allegedly asked Plaintiff if she "felt comfortable expressing her concerns"[7] to Ford; Plaintiff claims she responded in the negative. Later on January 14, 2014, Plaintiff met with Ford

---

[6] *Id.* at pp. 2-3.
[7] *Id.* at p. 3.
37815

concerning her alleged discriminatory pay. During this meeting, Plaintiff claims that Ford told her that she met with Human Resources Consultant Kevin Mulligan ("Mulligan") before each hire, and a formula was used to calculate the new employee's incoming pay. Plaintiff alleges that she requested to see the formula, but she never received it.

Beginning on January 15, 2014, Plaintiff claims that Ford threatened to take disciplinary action against her and informed her that she would not approve her "Tuition Reimbursement Request." Plaintiff alleges that Hospital policy required Ford to approve the request, as she was using the reimbursement to pay for school. Plaintiff claims that she and other employees expressed concerns about staff shortages, and the Hospital responded to these concerns by requiring all staff members to make time off requests six months in advance. Ford sent Plaintiff an email on February 10, 2014, asking to meet regarding a patient complaint/incident; however, Plaintiff alleges that she was not scheduled to work, nor was she at the Hospital on the date of the alleged patient complaint/incident.

During a two month period, five nurses were suspended, and nine or ten nurses either resigned or were allegedly fired by the Hospital. In response, the Hospital hired agency nurses, and Plaintiff alleges that the agency nurses worked with "little or no orientation to the facility," no access to computer charting, and no access to Omnicell for medication administration, leaving patients without vital medication – all violations of law.[8]

Plaintiff further alleges that, between March and October of 2014, on multiple occasions, she voiced her concerns to Hospital administrators and members of the Hospital Board ("the Board") about staffing shortages, call-ins from other nursing staff

---

[8] *Id.* at p. 4.
37815

members, nursing staff out on leave, the open position of Director of Nursing, and promotion of underqualified candidates to employment positions at the Hospital. On November 13, 2014, Plaintiff filed a Charge of Discrimination with the EEOC and the LCHR.

Plaintiff assisted a patient in filing a violation of privacy complaint in November of 2014. Plaintiff alleges that a physician at the Hospital entered a patient's room and gave him diagnostic lab results while a security guard was present. Plaintiff also contends that a nurse was present during this alleged violation, but she was never contacted by Human Resources after the incident was reported. Plaintiff claims that she called Neata Leake ("Leake"), an employee in the Human Resources department, and that she and the patient spoke with Leake about filing a formal complaint.

On November 26, 2014, Plaintiff arrived at the hospital in an ambulance with her four year old neighbor who was suffering from respiratory distress. Plaintiff maintains that she performed CPR on her neighbor at the scene and that the EMS director asked her to accompany the child to the Hospital to assist with resuscitation efforts. Plaintiff claims that, when she arrived at the Hospital, she gave Dr. Shields and the nurses on staff a verbal report on her neighbor. Plaintiff alleges that she was told by Judy Jones, interim director of nursing, "to clock into work since [Plaintiff] was actively taking care of the patient who was in code status."[9] Unfortunately, resuscitation efforts proved unsuccessful and the neighbor died. Plaintiff claims that this incident forms the basis of "one of the accusations made by the Louisiana State Board of Practical Nurse Examiners."[10]

---

[9] *Id.* at p. 6.
[10] *Id.*
37815

Following this incident, Plaintiff alleges that she and other African-American co-workers were "wrongfully accused of committing HIPPA violations, subjected to licensure complaints with their licensing boards, and falsely accused of misconduct by defendants in retaliation/reprisal for Petitioner's protected activities."[11]

On December 15, 2014, Dr. Shields, Chief Medical Officer, called Plaintiff and told her she would be suspended without pay for alleged HIPPA violations, and an email correspondence would follow from the Hospital CEO Lee Chastant ("Chastant") regarding her suspension. Dr. Shields also told Plaintiff not to report to work on December 16, 2014, but "he couldn't explain exactly why [Plaintiff] was being suspended."[12]

Ultimately, there were a total of five nurses suspended for alleged HIPPA violations. Plaintiff alleges that Caucasian nurses were suspended with pay, given the opportunity to resign, and all allowed to return to work; however, the two African-American nurses were suspended without pay and "were fired and not given any due process, they were never given the chance to meet and discuss the false allegations."[13] On December 16, 2014, Plaintiff informed an employee of the Hospital that she wanted her attorney present when she was questioned by the Hospital's attorney; this request was denied. On December 26, 2014, Plaintiff again alleged racial discrimination and reported two HIPPA violations that were "summarily dismissed by defendants," and the Defendants did not discipline these Caucasian employees.[14]

---

[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at p. 7.
37815

Defendants sent Plaintiff a back-dated letter of termination, with no explanation, on January 6, 2015.  Defendants reported Plaintiff to the Board of Nursing regarding the alleged HIPPA violations, placing Plaintiff's nursing license in danger.  The Board of Nursing closed the investigation and found that Plaintiff had committed no HIPPA violations.  Plaintiff claims she received a letter from Chastant on January 19, 2015, wherein he stated that her claims of discrimination relating to the manner in which the December 26, 2014 HIPPA violations were handled were "entirely unjustified."[15]

Plaintiff filed this *Complaint*[16] on April 8, 2016, alleging that Defendants violated Title VII of the Civil Rights Act of 1964[17] and Louisiana Revised Statute 23:301, *et seq*.  On May 26, 2016, Plaintiff filed an *Amended Complaint*[18] to include her Notice of Right to Sue Letter from the Department of Justice.  Defendants have filed a *Motion to Dismiss* Plaintiff's claims.

## II.    LAW AND ANALYSIS

### A.  Motion to Dismiss Under Rule 12(b)(6)

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[19]  The Court may consider "the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[20]  "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state

---

[15] *Id.*
[16] Rec. Doc. 1.
[17] 42 U.S.C. § 2000(e).
[18] Rec. Doc. 16.
[19] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007)(quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).
[20] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)).
37815

a claim to relief that is plausible on its face.'"[21]  In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[22]  A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[23]  However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[24]  In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[25]  "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[26]  On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation."[27]

---

[21] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).
[22] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted) (hereinafter "*Iqbal*").
[24] *Twombly*, 550 U.S. at 570.
[25] *Iqbal*, 556 U.S. at 678.
[26] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).
[27] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).
37815

## B. Motion to Dismiss Under Rule 12(b)(1)

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[28]  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim relief that is plausible on its face.'"[29] However, when ruling on a Rule 12(b)(1) motion, "the court is permitted to look at evidence in the record beyond simply those facts alleged in the complaint and its proper attachments."[30]  Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle plaintiff to relief."[31]

## C. Prescription

Defendants argue that "all of the alleged discrimination Plaintiff asserts in her EEOC Charge occurred […] outside of the 300-day statutory period..."[32] "When an employee discrimination claim is brought in a deferral state, an aggrieved employee must file a claim with the designated state agency of the EEOC within 300 days of the alleged unlawful employment action."[33] Plaintiff's EEOC "Charge of Discrimination" states that the

---

[28] *Hall v. Louisiana, et. Al.*., 974 F.Supp.2d 978, 985 (M.D. La. Sep. 30, 2013)(citing *Benton v. U.S.*., 960 F.2d 19, 21 (5th Cir. 1998)).
[29] *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).
[30] *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009).
[31] *Ramming*, 281 F.3d at 161 (citing *Home Builders Ass'n of Miss., Inc. v. City of Madison Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998)).
[32] Rec. Doc. 13-1, p. 5.
[33] *Kirkland v. Big Lots Store, Inc.*, 547 Fed.Appx. 570, 572-73 (5th Cir. 2013).(*See Nat'l R. R. Passenger Corp. v. Morgan,* 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).
37815

earliest and latest date of discrimination was January 23, 2014.[34] If the claim is filed within the 300 days, it is not prescribed.[35]

The Fifth Circuit in *Conner v. Louisiana Department of Health and Hospitals* held:

> This court has recognized that an intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent is sufficient to set [ ] the administrative machinery in motion.[36]

It is undisputed that Plaintiff submitted an intake questionnaire to the EEOC.[37] The issue before the Court is the date Plaintiff submitted her EEOC intake questionnaire. Plaintiff argues that the intake questionnaire was submitted on September 19, 2014.[38]

The Fifth Circuit in *Kirkland v. Big Lots Store Inc.* examined the question before the Court – what is the date that an EEOC intake questionnaire is deemed submitted for purposes of calculating the 300 day prescriptive period in Louisiana.[39] The plaintiff in *Kirkland*, like the Plaintiff in the present case,[40] argued that the EEOC intake questionnaire is submitted on the day it was mailed. In Ruling, the court stated:

> Mailing is not filing for purposes of Title VII. A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination. Accordingly, Kirkland's claim was not filed until it was received by the LCHR [Louisiana Commission on Human Rights] on May 6, 2010.[41]

---

[34] Rec. Doc. 22-1, p. 22.
[35] *See Kirkland*, 547 Fed.Appx. at 572-73.
[36] 247 Fed. Appx. 480, 481 (5th Cir. 2007)(quoting *Price v. Southwestern Bell Tel. Co.*, 687 F.2d 74, 78 (5th Cir. 1982); *see also Edelman v. Lynchburg College*, 535 U.S. 106, 118-119, 122 S.Ct. 1145, 152 L.Ed. 188 (2002)(internal citations omitted).
[37] *See* Rec. Docs. 13-1, 20.
[38] Rec. Doc. 22, p. 5.
[39] 547 Fed.Appx. at 572-73.
[40] Rec. Doc. 22, p. 5.
[41] *Kirkland*, 547 Fed.Appx. at 573.(quoting *Taylor v. Gen. Tel. Co. of Sw.*, 759 F.2d 437, 440 (5th Cir. 1985)(29 C.F.R. § 1601.13(a)(4)(2)(a)(A)(2010)).(emphasis original).
37815

Based upon the holding of the Fifth Circuit in *Kirkland*, Plaintiff's EEOC intake questionnaire will be deemed submitted on the date it was received by the LCHR.[42]

Examining the EEOC documents submitted, it is clear that the EEOC provided a letter dated October 8, 2014 wherein the EEOC "acknowledge[d] receipt of the above-numbered charge of employment discrimination."[43] As this is the date that the EEOC is acknowledging receipt of Plaintiff's EEOC complaint, the Court finds that the EEOC received the Plaintiff's intake questionnaire on October 8, 2014. Therefore, as long as the Plaintiff's alleged discriminatory conduct occurred on or after December 12, 2013, her claim is not time barred. Per her EEOC charge, Plaintiff's first and last date of discrimination occurred on January 23, 2014.[44] Accordingly, Plaintiff's Title VII discrimination claim is not time barred as she filed her EEOC complaint within the 300 day prescriptive period required in Louisiana.[45]

For the above reasons, Defendants' *Motion to Dismiss* Plaintiff's Title VII discrimination claim as time barred is DENIED.

### D. Scope of Plaintiff's EEOC Charge

Defendants argue that "Plaintiff's failure to promote claim should be dismissed because she failed to exhaust all of her administrative remedies by omitting it from her

---

[42] The Court rejects Plaintiff's argument that the submission date is September 17, 2014 based upon the Supreme Court's decision in *Edelman v. Lynchburg College*. 535 U.S. 106, 122 S.Ct. 1145, 152 L.Ed.2d 188 (2002). *See* Rec. Doc. 17, pp. 4-5. Applying *Edelman* to the present case, it is clear that the submission date relates back to when the Plaintiff's EEOC intake questionnaire was "filed" with the EEOC. However, the Fifth Circuit in *Kirkland* clearly stated that an EEOC intake questionnaire is deemed "filed" in Louisiana when it is received by the LCHR. Accordingly, the Court deems Plaintiff's intake questionnaire "filed" on the date it was received by the LCHR.
[43] Rec. Doc. 22-1, p. 17.
[44] *See* Rec. Doc. 22-1, p. 22.
[45] The Court need not examine Plaintiff's Lilly Ledbetter arguments as her discrimination claim is not time barred.
37815

EEOC Charge."[46]  Plaintiff counters that she "was not required to mention the specific words failure to promote."[47]

The question before the Court is whether Plaintiff has exhausted her administrative remedies on her failure to promote claim.  While Plaintiff's *Complaint* contains allegations of retaliation, harassment, and discrimination for disparate pay and failure to promote,[48] the EEOC Charge does not contain a claim for failure to promote.[49]  The court in *Pacheco v. Mineta*, relying on *Fellows v. Universal Restaurants, Inc.* and *Fine v. GAF Chemical Corporation*, stated: "this court interprets what is properly embraced in a review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."[50]  Accordingly, the Court may "look slightly beyond [the charge's] four corners, to its substance rather than its label."[51]

The language contained in the "Particulars" portion of the Plaintiff's Charge clearly alleges that she was discriminated against in being paid at a lower rate.  Absent, however, in the "Particulars" portion is any alleged discrimination claim based on failure to promote.  To allow Plaintiff's failure to promote claim to proceed "despite its loose fit with the administrative charge and investigation …[] would circumvent …agency efforts to voluntary compliance before a civil action is instituted."[52]  Because the facts supporting Plaintiff's claim for failure to promote in her *Complaint* are separate from the incidents of

---

[46] Rec. Doc. 13-1, p. 9.
[47] Rec. Doc. 26, p. 2.
[48] Rec. Doc. 16, p. 7.
[49] Rec. Doc. 22-1, p. 22.
[50] 448 F.3d at 789.
[51] *Id*.
[52] *Id*. (quoting *Ong v. Cleland*, 642 F.2d 316, 319 (9th Cir. 1981)).
37815

discrimination for disparate pay contained in her charge,[53] the Court finds that Plaintiff's failure to promote claim was unlikely "to grow out of the charge"[54] of disparate pay. Accordingly, Defendants' *Motion to Dismiss* Plaintiff's failure to promote claim pursuant to FRCP 12(b)(1) is GRANTED.

### E. Plaintiff's State Law Claims

Defendants argue that Plaintiff's Louisiana state law discrimination claim has prescribed, along with her claims for harassment and retaliation because Defendants were not informed of these claims. Louisiana Revised Statute 23:303(C) states:

> A plaintiff who believes he or she has been discriminated against, and who intends to pursue court action shall give the person who has allegedly discriminated written notice of this fact at least thirty days before initiating court action, shall detail the alleged discrimination, and both parties shall make a good faith effort to resolved the dispute prior to initiating court action.[55]

Federal district courts in Louisiana "have held [that] the filing of an EEOC charge of discrimination satisfies the notice requirement [La. R.S. 23:303(c)], but limits the state claim to the alleged discrimination detailed in the EEOC charge…"[56] As previously discussed, Plaintiff's EEOC discrimination, retaliation, and harassment Charge was timely filed and is not time barred. Defendants further argue that Plaintiff's state law claims for retaliatory discharge should be dismissed as they were not contained in the EEOC Charge which satisfies the notice requirement under La. R.S. 23:303(c). Plaintiff's *Complaint* is limited solely to the acts described in her EEOC Charge and those which

---

[53] *See* Rec. Docs. 16, 22-1, p. 22.
[54] *Pacheco*, 448 F.3d at 789.
[55] La. R.S. 23:303(C).
[56] *Johnson v. Hospital Corp. of America*, 767 F.Supp.2d 678, 700 (W.D. La. Feb.11, 2011).(*See e.g., Johnson v. Harrah's Entertainment, Inc.*, 2005 WL 3541139, *4 (E.D. La. 2005); *Dorgan v. Foster*, 2006 WL 2067716, *5, (E.D. La. 2006), citing *Dunn v. Nextel So. Corp.,* 207 F.Supp.2d 523, 524 (M.D. La. 2002).
37815

could reasonably be expected to grow from the EEOC investigation. As discussed above, Plaintiff's constructive discharge and demotion claims were likely to grow out of her charge of discrimination, and they are therefore properly before this Court. Because Plaintiff's Louisiana law claims are based upon her EEOC Charge, Defendants were given notice of her retaliation, harassment, discrimination, constructive discharge, and demotion claims because these claims were contained in, or likely to grow out of, her EEOC complaint.

Accordingly, Defendants' *Motion to Dismiss* Plaintiff's state law discrimination harassment, retaliation, constructive discharge, and demotion claim is DENIED.

### F. Plaintiff's Claim Against the Board of Commissioners

Defendants argue Plaintiff's claims against the Board of Commissioners ("Board") should be dismissed because "nowhere in the *Complaint* does Plaintiff set forth any factual allegations that they engaged in any wrongful or unlawful conduct."[57] The *Complaint* alleges the "[Board] had 'absolute control and authority over' the West Feliciana Parish Hospital."[58] Viewing Plaintiff's allegations in the light most favorable to her, Plaintiff's allegations against the Hospital "can also be construed as allegations against the [Board]."[59]

Thus, the motion to dismiss is DENIED as to the Board.

---

[57] Rec. Doc. 10-1, p. 13.
[58] Rec. Doc. 1, p. 1.
[59] *Williams v. Hospital Service Dist. of West Feliciana Parish, La.*, 15-cv-00095, 2015 WL 4656910 at *5 (M.D. La. Aug. 5, 2015).
37815

## III. CONCLUSION

For the foregoing reasons, Defendant's *Motion to Dismiss for Failure to State a Claim*[60] is GRANTED in part and DENIED in part. Defendant's *motion* does not move for, nor do they argue in support of, dismissal of Plaintiff's FMLA claims. Therefore Plaintiff's FMLA claims are not subject to dismissal, and remain before the Court.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 22, 2017.

*[signature]*

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[60] Rec. Doc. 13.
37815